UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGG PFEIFFER,

       Plaintiff,     **REPORT AND**
                 **RECOMMENDATION**

v.

                 04-CV-0155-JTC(M)

DAVID MAVRETIC and
SYGMA NETWORK, INC.,

       Defendants.
_____

    This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings in accordance with 28 U.S.C. § 636(b)(1)(A), (B) and (C) (Dkt. ##8, 50). Before me is defendants' motion for summary judgment seeking to dismiss plaintiff's Complaint (Dkt. #48). Oral argument was held on June 15, 2007. For the following reasons, I recommend that defendants' motion be granted in part and denied in part.

## BACKGROUND

    This action arises from a June 10, 2003 motor vehicle accident in which plaintiff's van was struck by defendants' tractor-trailer (Dkt. #48-12, Ex. E, pp. 75-80). Plaintiff alleges that he sustained damage to his cervical, thoracic and lumbar spines as a result of the accident (Dkt. #48-12, Ex. B, ¶12).

    On February 5, 2004, plaintiff commenced this action to recover for injuries that he allegedly suffered as a result of the accident (Dkt. #48-12, Ex. A). Following completion of

discovery, defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that plaintiff has not suffered a "serious injury" as defined in New York Insurance Law §5102.

**The Parties' Submissions**

While defendants' failure to file a statement of undisputed facts as required by Local Rule 56.1(a) can warrant denial of their motion (see Steinbach v. Bookman, No. 04-CV-639, 2006 WL 3717343, at *1 (W.D.N.Y. December 14, 2006)), absent any objection from plaintiff, and with the material facts at issue being readily apparent, I will proceed to determine defendants' motion on the merits.

**A.     Defendants' Submissions**[1]

**1.     Plaintiff's Pre-Existing Injuries**

Plaintiff had two pre-existing injuries to his lumbar spine as a result of workplace accidents. A June 6, 1991 MRI report from plaintiff's first accident indicated that plaintiff had "slight listhesis of L5 posterior on S1 with loss of normal signal from the L5-S1 interspace and a protruded disk that does encroach upon the foramina at L5-S1" (Dkt. #48-12, Ex. E, p. 96; Dkt. #48-12, Ex. F). A November 29, 1993 MRI report from plaintiff's second accident concluded that plaintiff had "lumbosacral disk disease with compression of left nerve root" (Dkt. #48-12, Ex. E, p. 10; Dkt. #48-12, Ex. H).

---

[1] "[D]efendants may rely on unsworn reports by plaintiff's physicians, but reports by defendant's own retained physicians must be in the form of sworn affidavits." Robinson v. United States, No. 02 CV 5166, 2005 WL 747039, at *5 (S.D.N.Y. March 31, 2005) (internal citations omitted).

### 2. Plaintiff's Injuries as a Result of the Accident

Following the June 10, 2003 motor vehicle accident, plaintiff was transported by ambulance to the emergency room of Millard Fillmore Suburban Hospital (Dkt. #48-12, Ex. E, pp. 82-90). X-rays of plaintiff's cervical spine were normal, but noted that the examination was "technically incomplete" because the suboptimal odontoid view was limited (Dkt. #48-12, Ex. I). X-rays of the lumbar spine showed a "transitional vertebral body at the lumbosacral junction" and mild narrowing at the L5-S1 level on a chronic basis (Id.). Plaintiff was diagnosed with a cervical strain and an exacerbation of his previous herniated disk (Id.). He was discharged with prescriptions for muscle relaxants and anti-inflammatories, and was instructed to follow up with his primary care physician (Id.).

On June 12, 2002, plaintiff was examined by his primary care physician, John Leone, M.D. (Dkt. #48-12, Ex. J). Dr. Leone found plaintiff to have good range of motion in his cervical and lumbar spines, and diagnosed plaintiff with acute cervical lumbar strains (Id.). On Dr. Leone's referral, plaintiff was evaluated by Frederick McAdam, M.D. on July 3, 2003 (Dkt. #48-12, Ex. K). Dr. McAdam found plaintiff's lumbar and cervical flexions to be 25% limited, causing mild pain (Id. at p. 1). He further noted that plaintiff had "motion restrictions at C6 and L5" (Id.), and stated:

> "Slump testing is negative. Hip and knee ranges of motion are full and pain free. He has normal latissimus dorsi muscle strength. Manual muscle tests reveal normal strength. Deep tendon flexes are good and symmetrical. Sensation to pinprick is intact. Straight leg raise and femoral nerve stretch testing are negative. He has a positive forward flexion test, seated, on the left with a left-on-right backward sacral torsion" (Id.).

Dr. McAdam's impression was "possible low-grade lumbar diskogenic pain", "probable cervical facet joint pain," "cervical dysfunction," "lumbopelvic dysfunction" and "decreased core stabilization" (Id.). He concluded that plaintiff's neck and lower back pain were causally related to the motor vehicle accident, but found that plaintiff had only "a mild partial disability of a temporary nature" (Id. at p. 2). Dr. McAdam released plaintiff to return to work with restrictions (Id.).

On July 9, 2003, plaintiff was re-evaluated by Dr. Leone (Dkt. #48-12, Ex. L), who noted that plaintiff's neck pain was improving, but that his back was still a problem (Id.). At that time, Dr. Leone noted "neck 75% better - ROM improving - low back only 25% - 30% better" (Id.). Dr. Leone further noted that plaintiff's cervical and lumbar spines demonstrated "fairly good" range of motion (Id.). Based on his examination, Dr. Leone repeated his impression that plaintiff was suffering from acute cervical and lumbar strains (Id.).

A July 10, 2003 MRI of plaintiff's lumbosacral spine revealed "[s]light asymmetric diffuse bulging of the annulus at the L5-S1 level" and "[m]inor diffuse bulging of the annuli at the L3-4 and L4-5 levels, with associated flattening of the anterior thecal sac" (Dkt. #48-12, Ex. M).

Plaintiff was also evaluated by Timothy Collard, M.D. on three occasions (Dkt. #48-12, Ex. N). Dr. Collard's July 15, 2003 examination revealed that plaintiff had "a full range of motion of his neck and shoulders" and "a full range of motion of his lumbar spine" (Id. at p. 1). Dr. Collard found that plaintiff's straight leg raising was normal, and that plaintiff had normal reflexes and good sensation and pulses (Id.). Dr. Collard further reviewed plaintiff's July

10, 2003 MRI and found that there was "no frank herniation noted" (Id.). He released plaintiff "to return to work on August 4, 2003 without restrictions" (Id. at p. 2).

Plaintiff was examined again by Dr. Collard on November 4, 2003 (Id.). This examination again revealed a "full range of motion of the shoulders" and "full range of motion of the neck with no complaints of any upper extremity symptoms" (Id.). Plaintiff told Dr. Collard at that time that "his neck and his back fe[lt] good" (Id.). An x-ray of plaintiff's dorsal spine conducted on September 4, 2004 revealed "mild degenerative changes" (Id.). At plaintiff's last examination by Dr. Collard on October 2, 2003, he noted that an MRI of plaintiff's dorsal spine showed "some degenerative disks and Schmorl's nodes that could give him symptoms in his dorsal area" (Id.).

On October 30, 2003, plaintiff was examined by a neurologist, George C. Kalonaros, M.D. (Dkt. #48-12, Ex. O). Dr. Kalonaros found plaintiff's range of motion in his head and neck to be normal (Id. at p. 2). His motor, sensory and reflex examinations were also normal (Id.). Dr. Kalonaros further found that plaintiff's history was "suggestive" of thoracic sprain and "degenerative changes but nothing very significant and certainly nothing amenable to surgery" (Id.).

### 3. Defendants' IME

An IME report by John J. Leddy, M.D., F.A.C.S.M. dated December 12, 2006 was prepared at defense counsel's request (Dkt. #48-12, Ex. P).[2] Dr. Leddy found that plaintiff's

---

[2] 28 U.S.C. § 1746 provides that unsworn declarations made under the penalty of perjury have the same evidentiary weight as affidavits. Therefore, defendants' IME report, which was signed under penalty of perjury, is admissible evidence for purposes of the motion.

cervical spine "has a full range of motion except for a mild reduction in left rotation accompanied by some discomfort" (Id. at p. 3). He also noted "a full range of thoracolumbar spine motion with some complaints of low back pain but no lower extremity atrophy and straight leg raising is negative" (Id.). Dr. Leddy opined that

> "the objective medical evidence indicates multiple normal physical and neurologic examinations throughout and his objective examination today is good. He has continued subjective complaints and some tenderness on examination but no objective evidence of muscle spasms or cervical or lumbar radiculopathy. His current lumbar complaints reflect his prior injuries and associated degenerative lumbar disk disease. His upper thoracic complaints are most consistent with a sprain/strain as a result of working out with weights, not the MVA. I find no clinical evidence of cervical disk injury. The videos I visualized show that Mr. Pfeiffer is functioning quite well in his daily activities, in job activities and, therefore, I found no objective medical evidence of limitation, disability, permanency or serious injury related to the June 10, 2003 MVA" (Id. at p. 4).

### 4.     Plaintiff's Activities

Defendants have submitted the affidavit of a private investigator, Phillip D. Smith, who between September and November 2005 observed plaintiff lifting mountain bicycles into his work van, riding his bicycle (including one approximately 20-mile ride), and exercising at the gym on several occasions, including performing upper body weight training exercises and running on the treadmill (Dkt. #48-2 (Reports dated 9/1/05, 9/21/05, 11/15/05)).[3]

Defendants also rely on plaintiff's June 21, 2006 deposition, wherein he testified that although he was no longer able to umpire his son's games, throw the ball with his son, ice skate, bowl or roller blade (Dkt. #48-12, Ex. E, p. 23), he is still able to open his pool (Id. at p.

---

[3]     Mr. Smith's affidavit was accompanied by a DVD of the relevant surveillance.

34), ride his bicycle (albeit no longer than 2 ½ miles) (Id. at pp. 36-38), lift weights (although using less weight) (Id. at p. 131-132), and use a treadmill (Id. at p. 136). Plaintiff alleges that while he continued his gym routine following the accident, in the past 3 or 4 months he was unable to use the gym because of his back (Id. at p. 136). However, plaintiff denied that a re-injury to his back stopped his gym routine (Id. at p. 137).

As a 17-year Ecolab employee, plaintiff's primary responsibilities were the repair and maintenance of various dish and laundry machines (Dkt. #48-12, Ex. E, p. 50). Plaintiff returned to work on August 18, 2003 on a full-time basis, performing the same job he had performed previously, but with a restriction not to lift over 25 pounds (Id. at pp. 118-119). He testified that 50% of his job responsibilities entailed lifting more than 25 pounds (Id.). Three to four months after plaintiff returned to work, the lifting restriction was terminated with the consent of plaintiff's doctor (Id. at pp. 120-121). Since plaintiff returned to work, he has missed no time due to his injuries from the motor vehicle accident (Id. at 123).

**B.    Plaintiff's Submissions**

In opposing the motion, plaintiff submitted several medical reports.[4] A September 9, 2004 report by Michael K. Landi, M.D. noted a C5-6 disk herniation and cervical radiculopathy, which he causally related to the motor vehicle accident (Dkt. #51, Ex. A). Dr. Landi found "a full active range of motion of the cervical spine. With lateral bending to the left,

---

[4] In opposition to defendants' motion for summary judgment, "[p]laintiff must submit admissible evidence in the form of sworn affidavits or affirmations by physicians." Robinson, supra, 2005 WL 747039, at *5. Each of the medical reports submitted by plaintiff, with the exception of the April 4, 2004 cervical spine MRI report are in admissible form (Dkt. #51, Ex. F). This report, which revealed "suspected broad base C5-6 disk herniation," was not accompanied by a signed declaration, and must be disregarded for purposes of this motion (see, supra, n. 4).

the patient experiences mild pain in the neck on the left.  Thoracic and lumbar active range of motion is within functional limits" (Id.).  He concluded that plaintiff "has a temporary partial mild disability" (Id. at pp. 1-2).

Dr. George Kalonaros prepared a report dated January 10, 2007, noting that plaintiff "continues to function at work only with the use of pain medication namely hydrocodone which he takes on a daily basis" (Dkt. #51, Ex. B) and concluding that plaintiff's limitation of activities "is directly related to the pain that is a direct result of the disk herniation which is a result of the automobile accident"  (Id.).

In a May 23, 2006 report, Melvin M. Brothman, M.D. noted that plaintiff had a limited active extension and flexion of his cervical spine, but had full active rotation and lateral bending (Dkt. #51, Ex. C).  Dr. Brothman found

> "no weakness or atrophy of the shoulder, girdle muscles.  Flexes in the upper extremity including biceps, triceps and brachial radialis are depressed but equal bilaterally.  There is good strength in the biceps and triceps muscle group.  He had no sensory deficient in testing to pin prick in the upper extremities.  There is no measurable forearm atrophy" (Id. at p. 2).

Dr. Brothman's examination of the lumbar spine revealed that plaintiff had full flexion and "good extension on lateral bending" (Id.).  Plaintiff's straight let raising was also negative (Id.).  Based on his examination and review of medical records, Dr. Brothman concluded that plaintiff had a "possible cervical disk C5-6 with left radiculopathy", causally related to the motor vehicle accident (Id. at p. 3).  Dr. Brothman rated plaintiff's overall prognosis as "fair" (Id.).

Dr. Brothman performed a second examination of plaintiff on September 6, 2006 (Dkt. #51, Ex. D), which revealed "active extension flexion and to some degree left lateral rotation and bending" in plaintiff's cervical spine (Id.).  He found

>"no weakness or atrophy of the shoulder, girdle muscles. The
>flexes of his upper extremity including biceps, triceps and
>brachioradialis are somewhat depressed but equal bilaterally.
>There is good strength in the biceps and triceps muscle groups. He
>has a diminished sensation when testing the pin prick over the C5
>and C7 distribution of his left hand. There is 3/8 inch atrophy of
>the left forearm compared to the right. He is right handed" (Id.).

Dr. Brothman diagnosed plaintiff with "cervical disk disease with radiculopathy" (Id.).

On July 31, 2006, plaintiff was examined by Ismet Hallac, M.D., a neurosurgeon (Dkt. #51, Ex. E). Dr. Hallac's examination revealed that plaintiff's neck movements "are full in range, and on rotation decrease by 40% on flexion and are guarded in movement in all directions" (Id. at p. 2). Dr. Hallac's objective testing revealed the following:

>"no deformity or muscle spasm in the cervical region on
>palpitation is noted. Elevation of the arms above the head is well
>performed. No weakness of the upper extremities is noted. On
>measurement the forearms are equal in circumference. The
>brachial radial reflexes are absent laterally, the biceps and triceps
>flexes are normal on the right side and absent on the left side"
>(Id.).

As to plaintiff's lumbar spine, Dr. Hallac found that plaintiff's "[b]ack movements are in full range" (Id.). Dr. Hallac's objective testing revealed that plaintiff's

>"[s]traight leg raising is 90 degrees bilaterally. Knee and ankle
>reflexes are normal and on measurement the calves are equal in
>circumference. No paravertebral muscle spasm or deformity of the
>dorsal and lumbar region on palpation noted. Cerebellar tests are
>physiological" (Id.).

Dr. Hallac opined that plaintiff

>"sustained injuries to his cervical lumbar spine. Injuries to the
>lumbar spine were superimposed over pre-existing disk disease in
>subsiding form. Injury to the cervical spine is in the form of disk
>herniation and aggravation of pre-existing osteoarthritis which will
>require surgical therapy" (Id. at pp. 2-3).

# DISCUSSION AND ANALYSIS

A.   **Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002)).

**The No-Fault Law**

Because this action is governed by New York State's "No-Fault Law" (N.Y. Ins. Law§ 5101, *et seq.*), in order to prevail at trial, plaintiff must prove that he has sustained a "serious injury" (see N.Y. Ins. Law § 5104(a)) which is defined as:

> "a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a nonpermanent

>  nature which prevents the injured person from performing
>  substantially all of the material acts which constitute such person's
>  usual and customary daily activities for not less than ninety days
>  during the one hundred eighty days immediately following the
>  occurrence of the injury or impairment." N.Y. Ins. Law § 5102(d).

Plaintiff alleges that he has sustained: 1) permanent consequential limitation of use of a body organ or member; 2) significant limitation of use of a body function or system; and 3) impairment of a non-permanent nature which has prevented him from performing substantially all usual and customary activities for not less than 90 out of the 180 days following the accident (Dkt. #48-12, Ex. D, ¶ 19).[5]

Defendants established their *prima facie* entitlement to summary judgment based, in part, on Dr. Leddy's IME report dated December 7, 2006, which found that plaintiff had full range of motion of his cervical and lumbar spines and no objective evidence of any limitation, disability, permanency or serious injury related to the motor vehicle accident (Dkt. #48-12, Ex. P, p. 4). I will address each of the categories of serious injury alleged individually, to determine whether plaintiff raised a triable issue of fact sufficient to defeat defendants' motion for summary judgment.

**1.      Significant Limitation of Use**

Whether the limitation of use is significant " 'involves a comparative determination of the degree or qualitative nature of an injury based on the normal function,

---

[5] Plaintiff's interrogatory responses indicate that he is alleging "[p]ermanent consequential limitations," "[c]onsequential limitation of use of a body organ or member," and 90-180 day substantial impairment (Dkt. #48-12, Ex. D, ¶19). However, there is no qualifying category for "consequential limitation of use of a body organ or member." See N.Y. Ins. Law § 5102(a). Plaintiff's attorney confirmed at oral argument that he intended to refer to a significant limitation of use of a body function or system.

purpose and use of the body part.' " Toure v. Avis Rent-A-Car Systems, Inc., 98 N.Y.2d 345, 353 (2002). A "minor, mild or slight" limitation does not constitute a serious injury. Licari v. Elliott, 57 N.Y.2d 230, 236 (1982). The "assessment of the 'significance' of a body limitation necessarily requires consideration not only of the extent or degree of the limitation, but of its duration as well." Partlow v. Meehan, 155 A.D.2d 647, 648 (2d Dep't 1989).

Dr. Hallac's August 1, 2006 report, based on the April 4, 2004 MRI[6] of plaintiff's cervical spine and his own examination, concluded that plaintiff had a disk herniation at C5-6 and a decreased range of movement in the neck of 40% on flexion (Dkt. #51, Ex. E, p. 2).[7] This finding was supported by objective evidence that plaintiff's "brachial radial reflexes [were] absent bilaterally", and that the biceps and tricep reflexes were absent on the left side (Id.). Dr. Hallac's evaluation is further supported by the MRI of Plaintiff's cervical spine completed on April 6, 2004, which indicated a broad based C5-6 disc herniation. (Dkt. #51, Ex. F, p. 1).

It has been consistently held that a measure of limitation, together with an MRI or other formal objective test, is sufficient to create a genuine issue of material fact. See Champman v. Verspeeten Cartrage, Ltd., No. 04-CV-84, 2007 WL 776420, at *4 (W.D.N.Y. March 12, 2007) (Skretny J.) (a 25% restriction in lumbar range of motion and 60% restriction in cervical range of motion supported by a MRI and discography/CT scan created a genuine issue

---

[6]  Although defendants point out that the April 4, 2004 MRI report (Dkt. #51, Ex. F) of the cervical spine is not admissible evidence (Dkt. #53, ¶11), there is nothing improper about Dr. Hallac relying on the MRI report in rendering his opinion. See Fed.R.Evid. 703; United States v. Locascio, 6 F.3d 924, 928 (2d Cir.1993). Nevertheless, even if the inadmissibility of the MRI report was fatal to plaintiff's action, I would be inclined to allow plaintiff to resubmit the evidence in admissible form. See Williams v. Elzy, No. 00 Civ. 5382, 2003 WL 22208349, at *6 n.3 (S.D.N.Y. September 23, 2003) ("Courts in the Second Circuit have generally declined to dismiss an action on 'mere technicalities.' ").

[7]  Defendants indicate that Dr. Hallac stated that plaintiff's "neck movements are in full in all range . . ." (Dkt. #53, 12). However, they omit the remainder of Dr. Hallac's finding, namely that "on rotation they decrease by 40% on flexion . . . ." (Dkt. #51, Ex. E, p. 2).

of material fact); Guito v. Prasad, No. 04-CV-3702, 2007 WL 57790, at *3 (E.D.N.Y. January 5, 2007) ("[D]ecreased range of motion reports, together with the evidence of disc bulges", warranted denial of summary judgment); Stein v. Bentor, No. 03-CV-5488, 2005 WL 2244831, at *9 (E.D.N.Y. September 15, 2005) ("*Toure* . . . simply requires either an expert's 'designation of a numeric percentage of a plaintiff's loss of range of motion' *or* a qualitative assessment of a plaintiff's condition if supported by objective evidence and a comparison of plaintiff's limitations to normal functions" (emphasis added)).

While evidence of a limitation at a single exam would not satisfy the duration component necessary to establish significance, plaintiff has also submitted the September 6, 2006 report of Dr. Brothman, noting limited active flexion of the cervical spine accompanied by objective medical evidence of muscle atrophy and diminished sensation to a pin prick (Dkt. #51, Ex. D). This is sufficient to raise a factual issue as to serious injury. See Hayes v. Riccardi, 97 A.D.2d 954, 954 (4th Dep't 1983) (holding that a triable issue of fact existed where an examination of the plaintiff four days after the accident indicated a 40% range of motion deficit in plaintiff's cervical spine despite the fact that such deficit did not exist fifteen months later).

As to causation, while Dr. Hallac concluded that plaintiff sustained injuries to his cervical and lumbar spines, he failed to expressly link the injuries to the motor vehicle accident (Id.). Nevertheless, Dr. Landi, Dr. Kalanaros, and Dr. Brothman all expressly concluded that the C5-6 disk herniation was causally related to the accident (Dkt. #51, Exs. A, B, C).

Although the issue is close, when the evidence is viewed in the light most favorable to plaintiff, I find that the medical records submitted by plaintiff establishing a C5-6 disk herniation causally connected to the motor vehicle accident, accompanied by a quantifiable

and objectively supported restriction in movement lasting for at least a month, are sufficient to create a genuine issue of fact as to significant limitation of use.  See Mazo v. Wolofsky, 9 A.D.3d 452, 453 (2d Dep't 2004) (plaintiff's physician's affirmation was sufficient to raise a triable issue of fact where it "set forth the test he used to measure the plaintiff's range of motion, quantified the results of those tests, and concluded therefrom that the plaintiff sustained a decrease in certain aspects of his cervical and lumbar range of motion of 20% or more"); Nelms v. Khokhar, 12 A.D.3d 426, 427 (2d Dep't 2004) (objectively tested and measured restrictions in the range of motion of the cervical spine of 16% to 55% and in the lumbar spine of 22% to 33% were sufficient to raise a triable issue of fact as to whether plaintiff sustained a serious injury); Williams v. New York City Transit Auth., 12 A.D.3d 365, 365 (2d Dep't 2004) (plaintiff raised a triable issue of fact where he submitted proof demonstrating that his chiropractor re-examined him three years after the accident and recorded objectively tested and measured restrictions of 15-35% in the range of motion of the cervical and lumbar spines); Lantigua v. Williams, 305 A.D.2d 286, 286 (1st Dep't 2003) ("a 10-degree restriction on right and left lateral bend, sporadic decreased right-had sensation to pinprick, an equal but depressed deep tendon flex in both uppers, and weak right-hand grasp strength" was sufficient objective medical evidence to raise an issue of fact whether plaintiff sustained a serious injury); Hayes, supra, 97 A.D.2d at 959 (60% loss of range of motion in cervical region lasting for unspecified period between four days and fifteen months sufficient to create genuine issue of fact); Lopez v. Senatore, 65 N.Y.2d 1017, 1020 (1985) ("Where the treating physician . . . identified a limitation of movement of the neck of only 10 degrees to the right or left, and on that predicate expressed the opinion that there

was a significant limitation of use of a described body function or system, such evidence was sufficient for denial of summary judgment to defendants.").

**2.      Permanent Consequential Limitation of Use**

In order for an injury to qualify as a "permanent consequential limitation of use of a body organ or member", it is necessary that "[s]ome degree of permanency and causation must be demonstrated." Dwyer v. Tracey, 105 A.D.2d 476, 477 (3d Dep't 1984); see Altman v. Gassman, 202 A.D.2d 265, 265 (1st Dep't 1994) ("A permanent consequential limitation requires a greater degree of proof than a 'significant limitation', as only the former requires proof of permanency."). Furthermore, the claim must be based on objective medical evidence. See Gaddy v. Eyler, 79 N.Y.2d 955, 957 (1992).

The September 6, 2006 report of Dr. Brothman, based on objective medical tests, concludes that plaintiff reached his "maximum medical improvement from an orthopaedic standpoint." (Dkt. 51, Ex. D, p. 2). Plaintiff further asserts that Dr. Kalanaros' finding that plaintiff's condition has remained unchanged three and one-half years later raises an issue of fact as to the permanency of the injury (Dkt. #52, p. 3). I agree. See Ajnoha v. Demetrio-Mejia, No. 03-CV-2464SMG, 2005 WL 1330969, at *3 (E.D.N.Y. June 3, 2005.) ("Although Dr. Bentsianov does not explicitly describe plaintiff[s]' injuries as permanent, his findings of continued limited range of motion three years after the accident are sufficient to support an inference of permanency").

**3.      Non-Permanent Injury for 90 of 180 Days**

To qualify under this standard, plaintiff must prove that he has been prevented from performing "substantially all" of the "material acts which constitute [his] usual and customary daily activities" for "not less than ninety days of one hundred eighty days" following the accident. N.Y. Ins. Law § 5102(d). Where a plaintiff cannot prove that "substantially all" of his daily activities are limited for at least ninety days--including the ability to perform his job--plaintiff fails to establish a serious injury. See Licari, supra, 57 N.Y.2d at 238-39.

In this case, it is undisputed that plaintiff missed approximately 9 weeks of work (from June 10, 2003 to August 18, 2003), and thereafter returned to work with a lifting restriction of 25 pounds until November or December 2003 (Dkt. #48-12, Ex. E, pp. 118-119). Moreover, Dr. Collard recommended that plaintiff return to work on August 4, 2003 without restrictions (Dkt. #48-12, Ex. N), and the medical records from the 90-day period following the accident generally demonstrate that plaintiff had a full range of motion in his lumbar and cervical spines (Dkt. #48-12, Exs. J, N, O. Cf. Dkt. #48-12, Ex. K (Dr. McAdam's July 3, 2003 exam revealed a 25% limitation in the lumbar and cervical flexions)). Under these circumstances it cannot be said that plaintiff sustained a qualifying injury under the 90/180-day category. See Murphy v. Arrington, 295 A.D.2d 865, 867 (3d Dep't 2002) (holding that plaintiff who missed six weeks of work, followed by another six weeks of light duty, failed to establish a serious injury).

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment (Dkt. #48) be GRANTED to the extent of dismissing plaintiff's claim for serious injury under

the 90/180 days standard, but that it otherwise be DENIED.  Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:   Buffalo, New York
         July 20, 2007

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge